# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| ELIZABETH M. PARMAN, | No. 60735-2-II |
| Appellant, | |
| v. | |
| ESTATE OF RUTH MARIE PARMAN, and SHAWN PARMAN, a single man, | PUBLISHED OPINION |
| Respondents. | |

VELJACIC, C.J. — In 2018, Elizabeth Parman filed an unjust enrichment action against Shawn Parman, her ex-husband, and Ruth Parman, Shawn's mother who is now deceased (collectively, the Parmans).[1]  Elizabeth subsequently filed a notice of lis pendens.  Prior to the first appeal in this case, the Parmans moved to cancel the lis pendens two times; the trial court denied both motions.  On remand, the Parmans filed a third motion to cancel the lis pendens, which the trial court granted.

Elizabeth now appeals the trial court's cancellation of the lis pendens.  Elizabeth raises two arguments on appeal.  First, Elizabeth argues that the law of the case doctrine precluded Shawn from filing his third motion to cancel the lis pendens.  Second, Elizabeth argues that the trial court erred in cancelling her lis pendens and claims that an unjust enrichment action, along with a request

---

[1] Because the parties share the same last name, we will refer to the parties by their first names when applicable.  No disrespect is intended.

for an equitable lien, that has a sufficient nexus to the property at issue is an action affecting title to real property under RCW 4.28.320. Elizabeth requests attorney fees on appeal.

The Parmans respond that Elizabeth is prohibited from arguing that an equitable lien securing an unjust enrichment claim is sufficient for a lis pendens under the law of the case doctrine. And even if we were to address the merits of the argument, the Parmans maintain that an unjust enrichment claim coupled with an equitable lien is not sufficient to obtain a lis pendens. The Parmans request attorney fees on appeal.

We conclude that: (1) neither party was precluded from making their arguments under the law of the case doctrine; (2) the trial court erred in cancelling the lis pendens. A claim for unjust enrichment, that seeks an equitable lien where the plaintiff's claim is based on their resources being used to enhance the value of the real property at issue, is an action that affects title to real property as required under RCW 4.28.320 and RCW 4.28.328(2); and (3) neither party is entitled to attorney fees on appeal.

Accordingly, we reverse the trial court's cancellation of the lis pendens. We decline to award attorney fees to either party.

FACTS

I.  BACKGROUND

The underlying facts of this case are addressed in our previous decision in *Parman v. Parman*, No. 57860-3-II (Wash. Ct. App. Apr. 23, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2057860-3-II%20Unpublished%20Opinion.pdf (hereinafter *Parman* I). We provide a brief summary for context.

Elizabeth purchased the property at issue (also known as the "Renata Lane property") in 1997 for $117,000. Elizabeth and Shawn quitclaimed the Renata Lane property to Ruth and Robert

Parman on March 29, 2000. Robert and Ruth did not pay any value for the property. Elizabeth, Shawn, and their two children lived in the main portion of the house on the property while Robert and Ruth lived in an in-law apartment.

Robert passed away in 2005, leaving the property to Ruth. Ruth assured Elizabeth that Elizabeth and Shawn would inherit the property. Over the course of staying on the property, Elizabeth spent an additional $143,000 on the property with the goal of developing a horse farm.

Elizabeth and Shawn got divorced in 2017. Afterward, Ruth revoked her will, leaving the Renata Lane property solely to Shawn. "According to Ruth, she removed Elizabeth from her will based on the way Elizabeth treated [her] and the rest of [the] family members." *Parman* I, No. 57860-3-II, slip op. at 4 (internal quotation marks omitted) (alterations in the original).

Elizabeth commenced an action against the Parmans in 2018.[2] Elizabeth raised several causes of action, including unjust enrichment.[3] Elizabeth alleged that the Parmans were unjustly enriched by excluding Elizabeth from inheriting the property in light of her personal investments and labor over the years. Elizabeth requested a "[j]udgment against [the Parmans] in the amount of the value of all expenditures and contributions [she] ha[d] made in connection with" the Renata Lane property. Clerk's Papers (CP) at 9.

Elizabeth subsequently filed a notice of lis pendens in 2019.

---

[2] Ruth passed away on June 10, 2019. Ruth's estate was subsequently substituted as a party defendant in the case.

[3] Specifically, Elizabeth included causes of action for joint venture/partnership, estoppel, negligent/intentional misrepresentation, and tortious interference with contract/business expectancy.

II.     THE FIRST TWO MOTIONS TO CANCEL THE LIS PENDENS

The Parmans first moved to cancel the lis pendens on September 21, 2020.  The trial court denied the motion, reasoning that "an equitable lien creates an opportunity or the right to a lis pendens."  Rep. of Proc. (Oct. 9, 2020) at 28.

In September 2021, the Parmans moved for summary judgment.  The trial court partially granted the motion, dismissing Elizabeth's claims for negligent/intentional misrepresentation, joint venture/partnership, and unjust enrichment.

In March 2022, the Parmans moved for summary judgment to dismiss Elizabeth's breach of contract claim—the only remaining cause of action.  The court granted the motion.  Elizabeth subsequently filed a notice of appeal regarding the orders granting summary judgment.

Following the trial court's orders on summary judgment, the Parmans moved to cancel the lis pendens for the second time.  The trial court again denied the motion.  The trial court explained that because Elizabeth was appealing, the case was not "settled, discontinued, or abated" as required under RCW 4.28.320.

III.     THE FIRST APPEAL

Elizabeth appealed, in part, the trial court's orders granting summary judgment and quieting title in favor of the Parmans.  The Parmans cross-appealed the trial court's first order denying the motion to cancel the lis pendens.

In an unpublished decision, we held, among other things, that summary judgment denying Elizabeth's unjust enrichment claim was improper and reversed on this basis.

While ruling only on the quiet title action, we held that the trial court did not err in quieting title to the Parmans.  Elizabeth argued that she had "an equitable interest in the Renata Lane Property via her unjust enrichment claim, which create[ed] an equitable lien."  *Parman* I, No.

4

57860-3-II, slip op. at 44. Elizabeth claimed that she had an "interest" in the property because of the alleged equitable lien. *Id.* We disagreed, explaining that "[a] party to a quiet title action must succeed on the strength of his or her own title." *Id.* Since Elizabeth had no interest in the property, there was no basis to quiet title in her favor.

Finally, we dismissed the Parmans' cross-appeal regarding the lis pendens as untimely. We explained that since the trial court's order denying the Parmans' motion to cancel the lis pendens was filed in October 2020, the Parmans' cross-appeal filed in October 2022 was well-past the 30-day limit required under RAP 5.2(a).

Even though the Parmans did not challenge the second order denying their motion to cancel the lis pendens, we commented:

> [T]he record contains a second and more recent order denying a motion to cancel lis pendens, dated November 18, 2022, that is not on appeal. After the appeal and cross-appeal were filed in this case, the Parmans moved to cancel the lis pendens again on the basis that the action was settled in light of the superior court's summary judgment ruling. At no point in their second motion to cancel the lis pendens do the Parmans argue that the lis pendens was procedurally defective or impermissibly interfered with the probate code, as they argue to this court.
> . . . RCW 4.28.320 has three conditions that must be met for a court, in its discretion, to cancel a lis pendens. *Guest* [*v. Lange*], 195 Wn. App. [330], . . . 336[, 381 P.3d 130 (2016)]. The Parmans do not address this standard in their cross-appeal. Even if we reached the merits of this cross-appeal, the Parmans' cross-appeal would fail because the action was not settled, discontinued, or abated in October 2020. RCW 4.28.320. Because our review is based on an abuse of discretion standard, the superior court cannot be said to have abused its discretion in denying the motion to cancel the lis pendens in October 2020.

*Id.* at 54 n.21.

IV.     THE THIRD MOTION TO CANCEL THE LIS PENDENS

Following remand, the Parmans filed another motion to cancel the lis pendens. This time, the trial court granted the motion. The court explained that Elizabeth's unjust enrichment action was "not an action affecting title to real property" under RCW 4.28.328. CP at 408.

5

Elizabeth appeals.

ANALYSIS

I.    LAW OF THE CASE DOCTRINE

Elizabeth argues that the law of the case doctrine precluded the Parmans from challenging the lis pendens following remand from this court. The Parmans similarly argue that Elizabeth is precluded from arguing that her unjust enrichment action, coupled with an equitable lien, can be the basis for a lis pendens. We conclude that the law of the case doctrine does not preclude either parties' argument.

A.    Law of the Case Doctrine

The law of the case doctrine is codified under RAP 2.5(c).[4] "In its most common form," the doctrine "stands for the proposition that once there is an appellate holding enunciating a principle of law, that holding will be followed in subsequent stages of the same litigation." *Roberson v. Perez*, 156 Wn.2d 33, 41, 123 P.3d 844 (2005). The doctrine "'forbids, among other things, a lower court from relitigating issues that were decided by a higher court, whether explicitly or by reasonable implication, at an earlier stage of the same case[].'" *Lodis v. Corbis Holdings,*

---

[4] RAP 2.5(c) provides:

The following provisions apply if the same case is again before the appellate court following a remand:

(1) *Prior Trial Court Action.* If a trial court decision is otherwise properly before the appellate court, the appellate court may at the instance of a party review and determine the propriety of a decision of the trial court even though a similar decision was not disputed in an earlier review of the same case.

(2) *Prior Appellate Court Decision.* The appellate court may at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the appellate court's opinion of the law at the time of the later review.

*Inc.*, 192 Wn. App. 30, 56, 366 P.3d 1246 (2015) (internal quotation marks omitted) (alterations in the original) (quoting *San Juan v. Rullan*, 318 F.3d 26, 29 (1st Cir. 2003)).

The doctrine "serves to 'promote[ ] the finality and efficiency of the judicial process by protecting against the agitation of settled issues.'" *State v. Harrison*, 148 Wn.2d 550, 562, 61 P.3d 1104 (2003) (alteration in original) (internal quotation marks omitted) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988)).

Critically, the doctrine applies to only *appellate* decisions. *Worden v. Smith*, 178 Wn. App. 309, 324, 314 P.3d 1125 (2013). "The doctrine 'does not apply to identical issues raised repeatedly before the trial court.'" *Id.* (quoting *In re Estate of Jones*, 170 Wn. App. 594, 605, 287 P.3d 610 (2012)).

### B. The Parmans and the Lis Pendens

The Parmans were not precluded from litigating the lis pendens on remand because we did not explicitly or by reasonable implication decide the issue previously. "Failure to cross-appeal an issue generally precludes its review on appeal." *Amalgamated Transit Union Loc. 587 v. State*, 142 Wn.2d 183, 202, 11 P.3d 762 (2000). In *Parman* I, we dismissed the Parmans' cross-appeal challenging the trial court's first decision regarding their motion to cancel the lis pendens as untimely under RAP 5.2(a). No. 57860-3-II, slip op. at 54. Anything else in the opinion appearing to address the merits of the trial court's decision is dicta. *Sw. Suburban Sewer Dist. v. Fish*, 17 Wn. App. 2d 833, 841 n.3, 488 P.3d 839 (2021) (Dicta is "'an observation or remark made by a judge in pronouncing an opinion upon a cause, concerning some rule, principle, or application of law, or the solution of a question suggested by the case at bar, but not necessarily involved in the case or essential to its determination.'") (internal quotation marks omitted) (quoting *State ex rel. Lemon v. Langlie*, 45 Wn.2d 82, 89, 273 P.2d 464 (1954))).

7

As a result, the Parmans could properly challenge the lis pendens on remand since there was no appellate decision on the issue. *Worden*, 178 Wn. App. at 324.

C.    Elizabeth and the Equitable Lien

Elizabeth was not precluded from arguing that her unjust enrichment action, along with an equitable lien, could be the basis for a lis pendens. In *Parman* I, Elizabeth argued that her unjust enrichment claim created an equitable lien, which established an interest in the title to the property. No. 57860-3-II, slip op. at 44. We disagreed and held that Elizabeth's argument was unpersuasive in the context of quieting title, meaning only that Elizabeth did not have any right to title. *Id.* Accordingly, this court affirmed the trial court's ruling quieting title to the Parmans. *Id.*

Critically, however, we did not address whether an equitable lien *affects* title to real property, a different question than that presented to us in *Parman* I. Because of this, Elizabeth is not precluded from arguing she has a basis for a lis pendens arising from her particular unjust enrichment claim: one deriving from enrichment to the Parmans by virtue of improvements she made to the real property on which the lis pendens would be filed against, for which she is seeking an equitable lien if successful.

II.    ELIZABETH'S LIS PENDENS

Elizabeth argues that the trial court erred in cancelling the lis pendens. Because Elizabeth is pursuing an equitable lien for her unjust enrichment action, she claims that her action affects title to real property under RCW 4.28.320, supporting a lis pendens. The Parmans argue that Elizabeth's unjust enrichment action, secured by an equitable lien, does not affect title to real property under RCW 4.28.320. We agree with Elizabeth.

A.      Standard of Review

Generally, we review decisions to cancel a lis pendens for an abuse of discretion.  *Guest*, 195 Wn. App. at 335.  But we review a trial court's legal determinations de novo, regardless of a trial court making such determination in their discretionary authority.  *State v. Westwood*, 10 Wn. App. 2d 543, 550, 448 P.3d 771 (2019); *Dix v. ICT Grp., Inc.*, 160 Wn.2d 826, 833-34, 161 P.3d 1016 (2007).  Moreover, "[t]he meaning of a statute is a question of law reviewed de novo."  *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

Here, the trial court determined that Elizabeth's unjust enrichment action was "not an action affecting title to real property" under RCW 4.28.328.  CP at 408.  This was a legal determination.  *See Guest*, 195 Wn. App. at 335-337 (analyzing whether a filed supersedeas bond meant that an action was "settled, discontinued, or abated," thereby preventing a trial court to cancel a lis pendens, under RCW 4.28.320).

Therefore, we review the trial court's cancellation of the lis pendens de novo.

B.      Unjust Enrichment and Equitable Liens

"In matters of equity, 'trial courts have broad discretionary power to fashion equitable remedies.'"  *Sorenson v. Pyeatt*, 158 Wn.2d 523, 531, 146 P.3d 1172 (2006) (quoting *SAC Downtown Ltd. P'ship v. Kahn*, 123 Wn.2d 197, 204, 867 P.2d 605 (1994)).  But "it is a well-established rule that an equitable remedy is an extraordinary . . . form of relief."  *Sorenson*, 158 Wn.2d at 531.  Because of this, "[a] court will grant equitable relief only when there is a showing that a party is entitled to a remedy and the remedy at law is inadequate."  *Id.*

"Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it."  *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008).  To succeed in such an action, a plaintiff must

9

establish: (1) "a benefit conferred upon the defendant by the plaintiff;" (2) "an appreciation or knowledge by the defendant of the benefit; and" (3) "the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Id.* (internal quotation marks omitted) (quoting *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 159-60, 810 P.2d 12 (1991)).

Under § 56(1) of the *Restatement (Third) of Restitution and Unjust Enrichment* (A.L.I. 2011), when "a defendant is unjustly enriched by a transaction" that "the claimant's assets or services are applied to enhance or preserve the value of particular property to which the defendant has legal title, . . . the claimant may be granted an equitable lien on the property in question." More specifically, a plaintiff alleging unjust enrichment may obtain an equitable lien on a property if they "demonstrate a transactional nexus between the unjust enrichment that is the basis of liability and the specific property in which the claimant asserts remedial rights." *Id.* § 56 cmt. b. "The transactional nexus between the recipient's unjust enrichment and the property made subject to lien is most often supplied . . . when claimant's assets have been used to enhance or maintain the value of the property in question." *Id.* § 56 cmt. d.

An equitable lien "'is the right to have property subjected in a court of equity to the payment of a claim.'" *Nelson v. Nelson Neal Lumber Co.*, 171 Wash. 55, 61, 17 P.2d 626 (1932) (quoting *Kukuk v. Martin*, 331 Ill. 602, 163 N. E. 391, 392 (1928)). Equitable liens do "not exist until it is imposed by a written judgment or decree of [a trial] court." 19 ELIZABETH A. TURNER, WASHINGTON PRACTICE: FAMILY & COMMUNITY PROPERTY LAW § 11:40, at 279 (2015).

When a party obtains an equitable lien, there is "no estate or property in the thing to which [the equitable lien] attach[es]; they provide no basis for a possessory action . . . against the debtor. . . . [T]he debtor retains both title and the right to possession until court action is taken to subject

the security to payment of the debt it secures." *Monegan v. Pac. Nat. Bank of Wash.*, 16 Wn. App. 280, 287, 556 P.2d 226 (1976).

But "[a]n equitable lien has the ordinary characteristics of a lien for security." RESTATEMENT (THIRD) § 56 cmt. c. And when a "judgment is not satisfied, the claimant/lienholder can obtain a judicial sale of the property subject to lien," and the sale of "the proceeds [can be] applied to the satisfaction of the defendant's obligation to the claimant." *Id.*

C.    Lis Pendens

Under RCW 4.28.320, a party may file a lis pendens with the county auditor "[a]t any time after an *action affecting title to real property* has been commenced." (Emphasis added.) A "lis pendens" is "[a] notice, recorded in the chain of title to real property . . . to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome." BLACK'S LAW DICTIONARY 1117 (11th ed. 2019).

This filing serves to (1) give constructive notice that "the property is in dispute and . . . the record owner's interest is in question" and (2) "'freeze[] the status of the property in time,' preventing a party to the underlying action from transferring their interest." *134th St. Lofts, LLC v. iCap Nw. Opportunity Fund, LLC*, 15 Wn. App. 2d 549, 557, 479 P.3d 367 (2020) (quoting *Snohomish Reg'l Drug Task Force v. 414 Newberg Rd.*, 151 Wn. App. 743, 752, 214 P.3d 928 (2009)). A lis pendens has no impact on the parties' substantive rights, but because it clouds title, a lis pendens can interfere with a property owner's efforts to sell land or otherwise transfer ownership. *See 134th St. Lofts*, 15 Wn. App. 2d at 557-58; *John Morgan Constr. Co. v. McDowell*, 62 Wn. App. 79, 84, 813 P.2d 138 (1991).

A court may, in its discretion, remove a lis pendens if three conditions are met: "(1) the action must be settled, discontinued, or abated, (2) an aggrieved person must move to cancel the lis pendens, and (3) the aggrieved person must show good cause and provide proper notice." *Guest*, 195 Wn. App. at 336; RCW 4.28.320. An action is settled, discontinued, or abated if there has been a final disposition in the case. *Guest*, 195 Wn. App. at 337-38.

When a party files a lis pendens "in an action not affecting the title to real property," they are "liable to an aggrieved party who prevails on a motion to cancel the lis pendens." RCW 4.28.328(2). "Washington courts have not established a specific guiding criteria to aid in determining whether an action 'affects title to real property' under RCW 4.28.328(2)." *134th St. Lofts*, 15 Wn. App. 2d at 558.

D.     Lis Pendens and Equitable Liens

Whether "an action seeking to establish and impress an equitable lien" for monetary damages "affect[s] the title to real property" differs across jurisdictions. 51 Am. Jur. 2d *Lis Pendens* § 38 (2021); RCW 4.28.328(2). Jurisdictions that restrict the use of a lis pendens in this context do so because such actions, "even if [they] relate[ ] in some way to specific real property, . . . [do] not directly affect title to or right of possession of real property." 54 C.J.S. *Lis Pendens* § 11 (2020). Other jurisdictions, however, permit a lis pendens "based on an action to recover a money judgment where a valid judgment has been secured and made a lien against the property." *Id.*

### 1.    Arizona Law

When interpreting our lis pendens statute, we have previously relied on Arizona law, which has a similar lis pendens statute. *134th St. Lofts*, 15 Wn. App. 2d at 558; *Schwab v. City of Seattle*, 64 Wn. App. 742, 748, 826 P.2d 1089 (1992). Arizona is an example of a jurisdiction that permits a lis pendens "based on an action to recover a money judgment where a valid judgment has been secured and made a lien against the property." *Compare* 54 C.J.S. *Lis Pendens* § 11, *with Santa Fe Ridge Homeowners' Ass'n v. Bartschi*, 219 Ariz. 391, 396-98, 199 P.3d 646 (Ct. App. 2008).

In *Tucson Estates, Inc. v. Superior Court*, 151 Ariz. 600, 605, 729 P.2d 954 (Ct. App. 1986), the court articulated that "the purpose behind the doctrine of lis pendens is best served by construing the statute to permit the filing of a notice of lis pendens in any action involving an adjudication of rights incident to title to real property." And in *Coventry Homes, Inc. v. Scottscom P'ship*, 155 Ariz. 215, 218, 745 P.2d 962 (Ct. App. 1987), the court concluded that "an action to impose an equitable lien on real property is an action affecting title to that property." But the court also explained that "[t]here must be some basis for concluding that an equitable lien or constructive trust would be imposed on the real property subject to the notice of lis pendens." *Id.*

The Arizona Court of Appeals later articulated that "a lawsuit affects a right incident to title if any judgment would expand, restrict, or burden a property owner's right as bestowed by virtue of that title." *Bartschi*, 219 Ariz. at 396. *Bartschi* affirmed that *Coventry Homes* did not support "the notion that merely asking the court of imposition of a lien on real property compelled a conclusion that the lawsuit affected title to real property." *Id.* at 397.

2.      Washington Law

There is no modern authority in Washington evaluating whether an action seeking an equitable lien to secure a debt for monetary damages can be the basis for a lis pendens. Elizabeth relies extensively on our Supreme Court's decision in *Morton v. Le Blank*, 125 Wash. 191, 215 P. 528 (1923), for such a proposition.

*Morton* concerned a dispute over whether a purchaser of land was bound by the outcome of earlier litigation involving that same property. 125 Wash. at 191-92. Le Blank sold a 30-acre tract to Eller under an agreement that contemplated a future $2,000 mortgage in the event that Eller did not make payments on the existing mortgage on the property. *Id.* at 192-93. When Eller did not perform, Le Blank sued and filed a lis pendens, seeking either execution of the mortgage or a judgment declaring a $2,000 lien on the land. *Id.* at 193. While that action was pending, Eller conveyed the property to Morton, who had constructive notice of the suit through the lis pendens. *Id.* Shortly after Eller's conveyance to Morton, the trial court awarded Le Blank a judgment against Eller in "the sum of $2,000, which" was secured by an equitable lien on the land at issue. *Id.* at 194.

The original judgment was reversed on appeal. *Id.* at 194-95. On remand, Le Blank amended his complaint seeking only a lien on the property, not an execution of the mortgage. *Id.* To be clear, Le Blank never had a mortgage that granted *him* an interest in the property; there was only a contract between Le Blank and Eller. *Id.* The trial court issued the lien. *Id.* at 195.

Morton filed a separate action seeking to quiet title to the property. *Id.* at 195. The trial court quieted title in favor of Morton, and Le Blank appealed. *Id.* at 195-96. On appeal, our Supreme Court addressed whether Morton took "title to the land in question subject to the final

14

judgment rendered in the case of Le Blank against Eller, because of the original filing of the lis pendens." *Id.* at 196.

Our Supreme Court concluded that the lis pendens remained effective against Morton. *Id.* at 197-99. The court reasoned that Morton was subject to the lis pendens because Le Blank's action affected title to real property under RCW 4.28.320. *Id.* at 196. The court explained that Le Blank's action, from its inception, sought to enforce the "execution of a $2,000 mortgage upon the land of Eller to Le Blank," or, "in the alternative, the direct foreclosure . . . [of a] equitable lien upon the land for $2,000 as against Eller." *Id.* at 196-97. Consequently, Le Blank's equitable lien did not "destroy the effect of the filing of the notice of lis pendens." *Id.* at 199.

Following *Morton*, courts in Washington have concluded that "the purpose of the lis pendens statute is best served by a broad interpretation of its language." *Schwab v. City of Seattle*, 64 Wn. App. 742, 750, 826 P.2d 1089 (1992).

### 3. Elizabeth's Appeal

Here, the trial court erred in cancelling the lis pendens.

All relevant authority supports the validity of a lis pendens in this case. Under § 56 of the *Restatement (Third)*, Elizabeth could properly pursue an equitable lien because her unjust enrichment claim focused on assets that she expended to develop the Renata Lane property. This is so because her personal investments into the Renata Lane property established a transactional nexus between "the basis of liability and the specific property." *Id.* § 56 cmt. b.

Elizabeth's situation matches that of the illustrations provided in the Restatement:

> Mother and Stepfather (who reside in New York) invite Son to live in their Florida condominium, promising that he will either inherit it or be allowed to purchase it on favorable terms, as estate-planning considerations might dictate. Son moves to Florida and lives in the condominium for five years. During this time Son pays taxes, current maintenance expense, and condominium fees; he also pays for improvements and necessary repairs. Mother and Stepfather thereafter repudiate

15

their promise to Son, announcing their intention to sell the condominium to an unrelated purchaser. The promise to Son is unenforceable under the Statute of Frauds. On suit by Son against Mother and Stepfather, the court finds no unjust enrichment from Son's payment of taxes, maintenance, and fees, because these items may be viewed as the equivalent of rent. On the other hand, Son has a claim in unjust enrichment (§ 27) for the value added by the repairs and improvements, determined by the court to be $50,000. The court may subject the condominium to an equitable lien in favor of Son, securing defendants' liability in the amount of $50,000.

*Id.* § 56 cmt. d, Ill. 8.

Additionally, under Arizona law, an equitable lien can support a lis pendens if there is a basis for a lien to be imposed on the property at issue. *Coventry Homes*, 155 Ariz. at 218; *Bartschi*, 219 Ariz. at 396. The Parmans make no effort to argue against the applicability of either *Coventry Homes* or *Bartschi*.[5]

Furthermore, notwithstanding that *Morton* has slightly different facts, it supports the validity of a lis pendens in this case. Le Blank ultimately sought relief in the form of an equitable lien; he was not pursing an action that would have given him an interest in the property. 125 Wash. at 193. Nevertheless, our Supreme Court upheld the enforceability of the lis pendens, meaning that it was an action that affected title to real property for the purposes of RCW 4.28.320. *Id.* at 196-99.

---

[5] The Parmans cite to *Bartschi* for the proposition that a "lis pendens cannot be used as a tool to obtain leverage in cases that do not truly affect title." Br. of Resp't at 17. But *Bartschi* reaffirmed *Coventry Homes*'s holding that an equitable lien can be the basis for a lis pendens, so long as there is a basis "to conclude that a lien would be imposed on the property subject to the lis pendens." *Bartschi*, 219 Ariz. at 397. As previously explained, here, there is a basis to conclude that an equitable lien would be imposed on the property because of Elizabeth's investments into the Renata Lane property. Because of this, *Bartschi* is also factually dissimilar because the plaintiffs in that case, a homeowners' association, had no basis to impose a lien on the defendant's property. *Id.* at 397-98.

On these facts an equitable lien affects title to real property when looking at practical consequences of such a lien being imposed on the Renata Lane property. Assuming Elizabeth obtained a judgment for unjust enrichment and the trial court imposed an equitable lien on the property, Elizabeth would have the right to force a judicial sale of the property in the event that the Parmans failed to satisfy the debt. RESTATEMENT (THIRD) § 56 cmt. c. As such, Elizabeth's unjust enrichment action would certainly "involve[e] an adjudication of rights incident to title to real property" because it would affect the Parmans ownership of the Renata Lane property. *Schwab*, 64 Wn. App. at 748.

The Parmans claim that permitting Elizabeth to impose a lis pendens on the property would "circumvent Washington's prejudgment attachment statute." Br. of Resp't at 16; RCW 6.25.080. While a lis pendens can have several negative impacts on an individual's ownership of a property, its purpose is to give notice about what *might* happen after trial. *134th St. Lofts*, 15 Wn. App. 2d at 557-58. And on these facts, Elizabeth was eligible to file a lis pendens.[6, 7]

---

[6] The Parmans also allege that allowing Elizabeth to file a lis pendens would permit "any plaintiff alleging unjust enrichment based on improvements to another's land [to] automatically cloud title and sidestep the [prejudgment] attachment statute's safeguards." Br. of Resp't at 17. As we have previously held, "the purpose of the lis pendens statute is best served by a broad interpretation of its language." *Schwab*, 64 Wn. App. at 750. Our decision satisfies that purpose, but we do not opine on other scenarios outside this case. On these facts, Elizabeth's unjust enrichment claim and request for an equitable lien, based on years of investment and labor into the property at issue, was sufficient to be the basis of a lis pendens.

[7] Even though an equitable lien has not been issued in this case, the unjust enrichment action that is seeking an equitable lien, which derives from the property, is an action affecting title to real property. Consequently, Elizabeth could properly file a lis pendens prior to receiving a judgment for unjust enrichment or receiving an equitable lien on the Renata Lane property.

Therefore, we conclude that the trial court erred in cancelling the lis pendens. An unjust enrichment claim that has a sufficient transactional nexus to a property may qualify for an equitable lien which can support a lis pendens.[8]

III.    ATTORNEY FEES ON APPEAL

A.    Elizabeth's Request

Elizabeth requests attorney fees pursuant to RAP 18.1(a) and RCW 11.96A.150.

Under RAP 18.1(a), a court may award attorney fees on appeal "[i]f applicable law grants to a party the right to recover," and they dedicate a section of their brief to the request. Under RCW 11.96A.150(1), a court, in its discretion, may award attorney fees "to any party to the proceedings . . . from the assets of the estate or trust involved in the proceedings . . . or from any nonprobate asset that is subject to the proceedings."

Given the procedural posture of the case, we decline to award attorney fees on appeal.

B.    The Parmans' Request

The Parmans also request attorney fees on appeal.

RCW 4.28.328(2) and (3) both provide avenues for recovering damages and attorney fees when a lis pendens is wrongfully filed. But "where the claimants have a reasonable, good faith basis in fact or law for believing they have an interest in the property, a lis pendens is substantially justified." *S. Kitsap Fam. Worship Ctr. v. Weir*, 135 Wn. App. 900, 912, 146 P.3d 935 (2006).

Here, consistent with our conclusion above, Elizabeth had a substantial justification for filing the lis pendens because her unjust enrichment action affects title to real property. Consequently, the Parmans are not entitled to attorney fees under RCW 4.28.328(2) and (3).

---

[8] Because we conclude that the trial court erred in cancelling the lis pendens, we do not need to separately address whether the trial court abused its discretion in cancelling the lis pendens because the action was not "discontinued, settled, or abated" under RCW 4.28.320.

## CONCLUSION

Accordingly, we reverse the trial court's cancellation of the lis pendens and remand for proceedings consistent with this opinion.

Veljacic, C.J.

We concur:

Maxa, J.

Che, J.